1  SCOTT JOSEPH WALLACE
   21781 Ventura Blvd., Apt. 211
2  Woodland Hills, CA 91364
   Telephone: 310-597-2910
3  Plaintiff In Pro Per



FILED
CLERK, U.S. DISTRICT COURT

MAR 2 1 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  SCOTT JOSEPH WALLACE, An Individual,<br>12<br>              Plaintiff,<br>13<br>14        v.<br>15  CELLCO PARTNERS , dba VERIZON WIRELESS, A California Corporation; HARRIS<br>16  CORPORATION, A Florida Corporation: AT&T MOBILITY<br>17  LLC a California Limited Liability Company; The City and County of<br>18  Los Angeles, Mayor Eric Michael Garcetti, In his Individual & Official<br>19  Capacities; Chief Charlie Beck, In his Individual & Official Capacities;<br>20  DOES 1-10, Inclusive,<br>21              Defendants. | CASE NO. 2:15-cv-08680-DSF-ASx<br><br>[Removal from the Superior Court of California for the County of Los Angeles, Case No. LC102675;<br>Complaint Removed: November 6, 2015]<br><br>**SECOND AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATION, INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>Hon. Dale S. Fischer |

22

23                     **I.    INTRODUCTION/NATURE OF THE ACTION**

24  1. The Plaintiff, an African-American and resident of the County of Los Angeles, State of

25     California brings this action against the Defendants acting under color of law, and alleging

26     amongst others, a profound depreciation of his constitutional rights and violation of

27     Plaintiffs' right to privacy arising from the several and collective conducts, actions and/or

28     omissions of the Defendants and for refusing or neglecting to prevent such deprivations

1    and denials to Plaintiff of rights secured under the Constitution and laws of the United
2    States herein.

3

4    2.   This action arises from the despicable conduct of the Defendants who illegally, unlawfully,
5         intentionally and surreptitiously obtained, tracked and/or intercepted Plaintiff's cell phone
6         communications, geolocation information, eavesdropping and/or archiving of signals from
7         Plaintiff's cell phone ("collectively, "Communications Information") while in the privacy
8         of Plaintiff's home and where Plaintiff Communications Information could be intercepted,
9         recorded, tracked and /or obtained through invasive, intrusive and unlawful measures
10        without probable cause and using Plaintiff's race and/or color (being an African American)
         as a basis.

11   3.   The interception and/or tracking of Plaintiff's Communications Information by the
12        Defendants took place over a period of time commencing from 2012 and is still continuing.
13        Plaintiff discovered the violations around September 2014.

14

15   4.   The Defendants have applied a facially neutral policy, called or known as the Counter-
16        Terrorism and/or Regional Terrorism Investigations Program ("the Program") to the
17        Plaintiff and similarly situated individuals, in an intentional racially discriminatory
         manner.

18

19   5.   In response to widespread domestic surveillance abuses committed by the Executive
20        Branch and State institutions during law enforcement in the 1960s and 1970s, Congress
21        enacted legislation that provides for "the exclusive means by which electronic surveillance
22        . . . and the interception of domestic wire, oral, and electronic communications may be
23        conducted." 18 U.S.C. § 2511(2)(f) (emphasis added). This law is applicable to State
24        agents including the Los Angeles Police Department ("LAPD").

25   6.   At all times, during this highly offensive and unlawful intrusion upon Plaintiff's
26        Communications Information, the Plaintiff had a reasonable expectation of privacy at his
27        home, his cell phones communications, his effects howsoever and Communications
         Information and reasonably believed his privacy was safe and protected.

28

7. The outrageous conduct of the Defendants concerning the implementation of the Program were further heightened by the persistent use of the LAPD Air Unit to conduct unlawful surveillance of Plaintiff's home without probable cause ("the Surveillance by the LAPD Air Unit").

8. Plaintiff's privacy was shattered and violated when the Defendants through an unlawful, illegal and unauthorized means, intercepted, obtained and/or tracked his Communications Information using the stingray device and the Surveillance by the LAPD Air Unit without Plaintiff's consent, approval or knowledge.

9. By seriously compromising the free speech and privacy rights of the plaintiff and others, the Program violates the First and Fourth Amendments of the United States Constitution.

10. The unauthorized, illegal and unlawful interception and/or tracking of Plaintiff's Communications Information and the Surveillance by the LAPD Air Unit could have been done only by means of trespass together with and/or through the use of an enhanced device popularly referred to as "stingray", cell site simulators" or "IMSI catchers" in violation of Plaintiff's right to privacy guaranteed by the Constitution of the United States America.

11. The Plaintiff avers under information and belief that the Defendants CELLCO PARTNERSHIP, dba VERIZON WIRELESS; AT&T MOBILITY LLC, The City of Los Angeles, Chief Charlie Beck, Individually; DOES 1-10, Inclusive, by themselves and/or through their agents acting under the color of law, engage in acts and/or conducts in violation of Federal Law and the Constitution of the United States of America prohibiting the unlawful surveillance, interception , and/or tracking of Plaintiff's communications information.

12. The signals from Plaintiff's cell phone are unlawfully intercepted and the data intercepted and/or stored by the Defendants CELLCO PARTNERSHIP, dba VERIZON WIRELESS; AT&T MOBILITY LLC using the Stingray device manufactured and/or created by Harris Corporation who is no longer named in this complaint, under the authority, and/or support of the Defendant City of Los Angeles and BECK.

13. The communications information are then unlawfully obtained, transferred, released and/or provided to the Defendants Chief Charlie Beck and The City of Los Angeles through LAPD; without proper warrants, subpoenas or other legal authority.

14. The Defendants AT&T, Verizon, actions herein described are attributable to the Defendants City and BECK in that the Defendants AT&T, Verizon, and Defendants City and BECK engaged in a symbolic relationship using the stingray under the Program. Defendants City and BECK have also insinuated itself into a position of interdependence with The Defendants AT&T, Verizon that the Defendants AT&T, Verizon, and Defendants City and BECK are joint participant in the conduct and violations herein described. The arrangement between the Defendants City and BECK and Defendants AT&T and Verizon, and, coupled with the significant regulations and control over the program that was exercised by Defendants City and BECK, created a sufficient link between Defendants City and BECK and Defendants AT&T, Verizon, placing the Defendants AT&T, and Verizon, activities under the umbrella of state action sufficient to satisfy the requirements of 42 U.S.C Section 1983. Thus Defendants AT&T, and Verizon, when they unlawfully intercepted, transferred and/or recorded the Plaintiff's communication information under the Program, thereby violating the Plaintiff's right as protected by law.

15. The Stingray device was created and /or owned by defendants and the defendants intentionally used the same to intercept, surveyed, recorded, obtained, stored, transferred and/or share the Communications Information together with the Surveillance by the LAPD Air Unit about the Plaintiff without the Plaintiff's consent or approval.

16. Unbeknownst to the Plaintiff, the Defendants acting under the color of law, have been spying, surveilling, recording and/or intercepting Plaintiff's communications information through the unauthorized, indiscriminate and unapproved use of clandestine technology (usually undetectable by most mobile phones) known as "Stingray", "Triggerfish" or IMSI Catcher (collectively "Stingray") created in collusion, concert and under the authority of the Defendants City of Los Angeles.

17. The Stingray device, software or hardware is a virtual Base Transceiver Station (VBTS)-essentially a fake , portable cell tower.  This continuing surveillance and/or interception of the Plaintiff's cell phone, including the indiscriminate remote access to Plaintiff's

673788

-4-

communications information was accomplished without the knowledge or consent of the Plaintiff.

18. The Stingray device was created by defendants and the defendants intentionally used the same to intercept, survey, obtain, store transfer and/or share personal information about the Plaintiff without the Plaintiff's consent or approval.

19. According to published news reports, the Stingray devices were acquired by LAPD, using a federal Homeland Security grant, for counter-terrorism investigations following the 911 terrorist attacks. The Federal Department of Homeland Security grant documents indicated that the said the device was intended for "regional terrorism investigations" or the Program

20. Generally, mobile devices such as the Plaintiff's cell phones connect to the wider network by using the antennae closest to them at the time. But when the LAPD sets up its StingRay, it is often the most powerful signal in the area. Instantly, the LAPD's spy equipment becomes the go-to "tower" for every cellphone and mobile device nearby — not just the phone carried by the suspect they are tracking but also include Plaintiff's cell phone.

21. The LAPD in using this anti-terrorism device indiscriminately sweeps up cellphone communications of innocent bystanders such as Plaintiff during burglary, drug and murder investigations. Therefore, the Defendants conducts in accessing Plaintiff's phones with Stingray constitutes a "search and seizure" under the Constitution's Fourth Amendment, and requires a warrant.

22. Stingrays are highly intrusive and indiscriminate. To locate the Plaintiff's cell phone, stingrays obtain information from all devices on the same network in a given area and send signals into the homes, bags, or pockets of the Plaintiff and third parties alike. This type of device, can capture the content of Plaintiff's communications, not merely the location of the device.

23. Each and all of the acts (or threats of acts) alleged herein were done by defendants, and/or their officers, agents, and employees, under color and pretense of the statutes, ordinances, regulations, customs and usages of the Defendants.

673788

-5-

24. The Plaintiff is further informed and believes and thereon alleges that an independent company, and not a defendant in this action, called X-Cellular Technologies has created a technology using a state of the art GSM Hybrid interception equipment and is able to notify the user of this technology of any act of interception. This technology also enables the user to be alerted of any abnormal number of GSM network re-registration requests (such as the Stingray device used by the Defendants to intercept Plaintiff's cell phone communications, data and/or geolocation information) sent by network operators or GSM interceptors.

25. The Plaintiff procured the technology created by X-Cellular Technologies and found an extensive and worrisome interception and/or surveillance over Plaintiff's cell phone communications, data and/or geolocation information carried out by the Defendants using the Stingray device.

26. Plaintiff seeks to recover damages and injunctive reliefs caused to the Plaintiff by Defendants' invasion of Plaintiff's privacy, theft of plaintiff's private information and unlawful interception and access to acquired and exported data and other stored electronic communications in violation of the Electronic Communications Privacy Act; The Stored Communications Act, Section 1983 of the Civil Rights Act, and the Fourth Amendment of the United States Constitution.

## II.   JURISDICTION, VENUE, AND NOTICE

27. This action arises under the Constitution and laws of the United States, including the 4th Amendment of the United States Constitution and is brought pursuant to 42 U.S.C. §1983; Sections 2511 and 2520 of the Electronic Communications Privacy Act (ECPA), I8 U.S.C; Sections 1020, 2701 of the Stored Communications Act ("SCA").The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343.

28. This case is instituted in the United States District Court for the Central District of California pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

## III.  PARTIES

29. At all times relevant hereto, Plaintiff Scott Joseph Wallace is a resident of Los Angeles County, in the State of California and a citizen of the United States of America.

30. At all times relevant hereto, Defendant CELLCO Partnership, dba as Verizon ("Defendant Verizon") is a California Corporation with its principal place of business in the City of Los Angeles, California. The Defendant Verizon is a private telecommunications service provider and was acting under color of state law with the authority, support, sanction and/or in concert and/or in conjunction with the other defendants herein when it unlawfully intercepted, surveyed, shared, transferred and/or release the Plaintiff's communications, data and/or geolocation information.

31. At all times relevant hereto, Defendant AT&T MOBILITY LLC, A California Limited Liability Company ("Defendant AT&T") with its principal place of business in the City of Los Angeles, California. The Defendant AT&T is a private telecommunications service provider and was acting under color of state law with the authority, support, sanction and/or in concert and/or in conjunction with the other defendants herein when it unlawfully intercepted, surveyed, shared, transferred and/or release the Plaintiff's communications, data and/or geolocation information with the Consent and/or approval of the Plaintiff.

32. At all times relevant hereto, Defendant Chief Charlie Beck ("Defendant BECK) is a citizen of the United States and a resident of the State of California and was acting under color of state law in his capacity as a law enforcement officer employed by the Defendant City and/or of the Los Angeles County Police Department.

33. As the Chief of the Los Angeles Police Department, Defendant BECK both exercised and delegated his municipal final decision making power to the Internal Affairs Bureau and others. On information and belief, he also trained and supervised other employees in the Los Angeles Police Department.

34. Defendant City of Los Angeles in the County of Los Angeles, hereinafter "Defendant City" is a California municipal corporation and is the legal entity responsible for itself and for the

Los Angeles Police Department. This Defendant is also the employer of the individual Defendant and is a proper entity to be sued under 42 U.S.C. § 1983.

35. Defendant City and Defendant BECK are properly sued directly under 42 U.S.C. §1983 for their own and their delegated deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures under the Program which were moving forces in the complained of constitutional and statutory violations and resulting injuries.

36. The Defendant City is also properly sued under 42 U.S.C. § 1983 for the challenged delegated final decisions of Defendant BECK in his official capacity as the Chief of the Los Angeles Police Department, and for those of any final delegated decision makers, with respect to the hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices under the Program.

37. The Defendants AT&T, Verizon, actions herein described are attributable to the Defendants City and BECK in that the Defendants AT&T and Verizon, and Defendants City and BECK engaged in a symbolic relationship using the stingray under the Program. Defendants City and BECK have also insinuated itself into a position of interdependence with The Defendants AT&T and Verizon, that the Defendants AT&T and Verizon, and Defendants City and BECK are joint participant in the conduct and violations herein described. The arrangement between the Defendants City and BECK and Defendants AT&T, Verizon,, coupled with the significant regulations and control over the program that was exercised by Defendants City and BECK, created a sufficient link between Defendants City and BECK and Defendants AT&T, Verizon,, placing the Defendants AT&T, Verizon, and activities under the umbrella of state action sufficient to satisfy the requirements of 42 U.S.C Section 1983. Thus Defendants AT&T and Verizon,, when they unlawfully intercepted, transferred and/or recorded the Plaintiff's communication information under the Program, thereby violating the Plaintiff's right as protected by law.

38. Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 10 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiff is informed and believe and based on such information and belief aver that each of the DOE Defendants is contractually, strictly,

negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiff will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

39. Plaintiff is informed and believes and based on such information and belief aver that the Defendants on record and DOE Defendants 1 through 20, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.

40. Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

41. All defendants acted under color of law in committing the acts complained of herein.

## IV.   STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

42. Plaintiff incorporates all of the preceding paragraphs, including the allegations in the introduction, as if they were fully set forth again at this point.

43. This lawsuit challenges the constitutionality of the secret device called "Stingray" created and/or developed and being carried out or used by the Defendants City using the telecommunications services and devices provided by all of Defendant AT&T, and Defendant Verizon. Stingray intercepts vast quantities of the communications via telephone without the approval of the innocent party such as the Plaintiff in this case.

44. Defendant BECK and Defendant City worked with, sanctioned, approved and/or authorized the telecommunications companies such as Defendant AT&T, and Defendant Verizon operating within the State of California to access personal communications that pass through the Stingray device and/or switches controlled by these Defendants. This device switches, which are located close to cell towers owned and/or managed by the Defendant AT&T, and Defendant Verizon, serve as primary gateways for communications

going into and out of the Plaintiff's cell phones. The Stingray device or switches captures unique identifiers of the Plaintiff or subscribers, track the devices and forces connected to Plaintiff's cell phone to use no call encryption, thus making signal susceptible to interception and conversion to audio.

45. The Defendants AT&T and Verizon received instructions, directions, aid, comfort, succor, and/or Protection from the Defendants City and BECK in pursuing the objectives of their principal, Defendants City and BECK.

46. While masquerading as a cell tower, Stingrays log identifiers like the international Mobile Subscriber Identity ("IMSI") and International Mobile Station Equipment Identity ("IMEI") numbers of all (including non-target) nearby GSM mobile phones as they attempt to attach to Stingray.

47. Using this Stingray Device, the Defendants City and BECK in concert and/or through the collusion, aid and support of the Defendant AT&T, Defendants and Defendant Verizon recorded, surveyed and/or intercept the communications of people within and outside the State of California without probable cause to believe that the surveillance targets have committed or are about to commit any crime.

48. At all material times, Plaintiff upon information and belief alleges that the Stingray device developed and used by the Defendants through the services of Defendant AT&T, and Defendant Verizon would intercept, track and eavesdrop on the cellphone signals, data and/or geolocation information of the Plaintiff by muscling in between real cell towers provided and/or control by Defendant AT&T, and Defendant Verizon and nearby mobile phones. The data collected is stored and/or release to the Defendants City, Defendant BECK while acting under the color of law.

49. The Defendants AT&T, Verizon, actions herein described are attributable to the Defendants City and BECK in that the Defendants AT&T, and Verizon, and Defendants City and BECK engaged in a symbolic relationship using the stingray under the Program. Defendants City and BECK have also insinuated itself into a position of interdependence with The Defendants AT&T and Verizon, and that the Defendants AT&T and Verizon, and Defendants City and BECK are joint participant in the conduct and violations herein

described. The arrangement between the Defendants City and BECK and Defendants AT&T, and Verizon, , coupled with the significant regulations and control over the program that was exercised by Defendants City and BECK, created a sufficient link between Defendants City and BECK and Defendants AT&T, Verizon, and placing the Defendants AT&T, Verizon, activities under the umbrella of state action sufficient to satisfy the requirements of 42 U.S.C Section 1983. Thus Defendants AT&T, Verizon, when they unlawfully intercepted, transferred and/or recorded the Plaintiff's communication information under the Program, thereby violating the Plaintiff's right as protected by law.

50. The Plaintiff is a prominent member of the society who frequently communicate by telephone with people within and outside the United States, including in the Middle East, Africa and Asia. Because of the nature of their calls, and the identities and locations of those with whom Plaintiff communicate, plaintiff have a well-founded belief that his communications are being intercepted under Stingray and Surveillance by the LAPD Air Unit. The Stingray and Surveillance by the LAPD Air Unit is disrupting the ability of the plaintiffs to talk with sources, locate witnesses, conduct scholarship, and engage in advocacy.

51. Plaintiffs and members of his family routinely communicate by cell phone both within and outside the United States, including people in the Middle East, Africa and Asia. Because of the nature of plaintiffs' communications and the identities and locations of those with whom they communicate, plaintiff has a well-founded belief that his cell phone communications, data and/or geolocation information are being intercepted by the Stingray device employed by the Defendant City and Defendant BECK using the services of and acting under color of state law with the authority, support, sanction and/or in concert and/or in conjunction with, AT&T and Verizon.

52. The LAPD's widespread constitutional abuses and Surveillance by the LAPD Air Unit have flourished as a result of, and are directly and proximately caused by policies, practices and/or customs devised, implemented and enforced under the Program by Defendants Chief Charlie Beck, and The City of Los Angeles through Los Angeles County Police Department and its officers.

53. Defendants Chief Charlie Beck and The City of Los Angeles through Los Angeles County Police Department and its officers have acted with deliberate indifference to the constitutional rights of those who would come in contact with LAPD officers by: (A) failing to properly screen, train and supervise the LAPD officers under the Program, (B) inadequately monitoring LAPD officers and their surveillance, interception and/or tracking practices using the Stingray device and the LAPD Air Unit under the Program, (C) failing to sufficiently discipline officers who engage in constitutional abuses under the program, and (D) encouraging, sanctioning and failing to rectify the LAPD unconstitutional practice under the program.

54. Individuals and residents of the State of California including the Plaintiff have a fundamental right to maintain the privacy and confidentiality of their homes, effects, cell phones, Communications Information and to guard against intrusions into personal space. Even in an era when scientific advancements enable unprecedented access to one's information, fundamental rights to maintain a sphere of privacy around one's home, effects, cell phone, geolocation, call records, etc must remain inviolate.

55. The Defendants use of the Stingray device and Surveillance by the LAPD Air Unit is inhibiting the lawful, constitutionally protected communications of plaintiff and others not before the Court.

56. The Plaintiff's Communications Information that are surveyed, intercepted, recorded, tracked, and/or obtained and Surveillance conducted by the LAPD Air Unit constituted a flagrant violation and invasion of Plaintiff's privacy and his right to be free from unlawful governmental intrusion into his seclusion during law enforcement by police officers and to enjoy the equal protection of the law. For this reasons, the Defendant's conducts must be condemned.

57. As a direct and proximate result of the defendants' policies, practices and /or custom under the Program, hundreds of thousands of the City and County residents, in particular, the Plaintiff, have been subjected to unconstitutional tracking and interception of their communication information by the officers of the LAPD acting under color of state law with the authority, support, sanction and/or in concert and/or in conjunction with

Defendants AT&T and Verizon. Indeed, many Americans including the Plaintiff repeatedly have been victims of the suspicionless surveillance, tracking and interception of their communications information and surveillance by the LAPD officers. **In just a four month period in 2012, according to documents obtained by the First Amendment Coalition, the LAPD has used the device at least 21 times in "far more routine" criminal investigations. The LA Weekly reported Stingrays "were tapped for more than 13 percent of the 155 'cellular phone investigation cases' that Los Angeles police conducted between June and September last year".** Moreover, the LAPD's constitutional abuses have been attended by unlawful searches and seizures with probable cause.

58. Plaintiff seeks to recover damages and injunctive reliefs caused to the Plaintiff by Defendants' invasion of Plaintiff's privacy, theft of plaintiff's private information and unlawful interception and access to acquired and exported data and other stored Communications Information and his right to be free from discrimination in law enforcement by police officers and to enjoy the equal protection of the law, in violation of the Constitution of the United States.

59. At all times herein, the Plaintiff has a reasonable and legitimate expectation of privacy in his communications information (as defined in this compliant) because the constitutional right to such communications information is surely "one that society is prepared to recognize as reasonable."

60. Plaintiff brings this action pursuant to Sections 2511 and 2520 of the Electronic Communications Privacy Act (ECPA), I8 U.S.C; Sections 1020, 2701 of the Stored Communications Act ("SCA") and Section 1983 of the Civil Rights Act, 42 U.S.C and the Fourth Amendment of the United States Constitution.

## THE PROGRAM

61. According to published news reports, in the fall of 2006, the Defendant City through the LAPD launched a secret surveillance counter terrorism program ("the Program") to intercept, without prior judicial authorization, the telephone and Internet communications of people within and outside the State of California.

62. Under the Program, the LAPD engages in "electronic surveillance" in violation of the Plaintiff's 4th Amendment Rights, section 1983 of the Civil Rights Acts, the ECPA and the SCA.

63. Under the Program, the LAPD intercepts vast quantities of international telephone and Internet communications (hereinafter collectively "communications") of people inside and outside the State of California, including citizens and lawful permanent residents.

64. Under the Program, the LAPD also intercepts some purely domestic communications, that is, communications among people all of whom are inside the Los Angeles County, State of California.

65. Under the Program, the LAPD intercepts the communications of people inside the County and/or City of Los Angeles without probable cause to believe that the surveillance targets have committed or are about to commit any crime.

66. The Program requires the LAPD acting under color of state law with the authority, support, sanction and/or in concert and/or in conjunction with AT& T and Verizon to access communications that pass through switches controlled by these companies Defendants AT& T and Verizon. These switches, which are located inside the State of California, serve as primary gateways for communications going into and out of the State of California.

67. The Defendants AT&T\ and Verizon, are private entities and together, they are responsible for the installation, management and provision of services in the telecoms sector of our economy. As required under the approval, authority, consent and sanction of the Defendants City and BECK pursuant to the Program, the Defendants AT&T and, Verizon, acted under color of law when they unlawfully intercepted, transferred and/or recorded the Plaintiff's communication information under the Program, thereby violating the Plaintiff's right as protected by law.

68. **The Defendants AT&T, and Verizon, and actions herein described are attributable to the Defendant City and BECK in that the Defendants AT&T, Verizon, and Defendant**

**City and BECK engaged in a symbolic relationship using the stingray under the Program. Defendant City and BECK have also insinuated itself into a position of interdependence with The Defendants AT&T, Verizon, that the Defendants AT&T, Verizon, and Defendant City and BECK are joint participant in the conduct and violations herein described. The arrangement between the Defendant City and BECK and Defendants AT&T, Verizon,, coupled with the significant regulations and control over the program that was exercised by Defendant City and BECK, created a sufficient link between Defendant City and BECK and Defendants AT&T, Verizon, placing the Defendants AT&T and Verizon, activities under the umbrella of state action sufficient to satisfy the requirements of 42 U.S.C Section 1983. Thus Defendants AT&T and, Verizon, when they unlawfully intercepted, transferred and/or recorded the Plaintiff's communication information under the Program, thereby violating the Plaintiff's right as protected by law.**

69. The use of Stingrays by the LAPD under this program, are particularly odious because they give the LAPD dangerous "general warrant" powers, which the founding fathers specifically drafted the Fourth Amendment to prevent. The Stingrays allow the LAPD to point a cell phone signal into all the houses in a particular neighborhood, searching for one target while sucking up everyone else's location including that of the Plaintiff along with it. With one search the police could potentially invade countless private residences at once.

70. The Defendants City, and BECK through the LAPD and with the authority, approval and sanction of the Defendants AT&T and, VERIZON obtains names, telephone numbers and Internet addresses from the cell phones and other information found in the possession of persons deemed suspicious. The Defendants City, and BECK through the LAPD and with the authority, approval and sanction of the Defendants AT&T, VERIZON intercepts, records and/or survey the telephone numbers and internet addresses associated with these people, as well as numbers and emails associated with anyone who communicates with them including the Plaintiff, and continues to identify additional telephone numbers and Internet addresses in an expanding network of people with fewer and fewer links to the original suspect. Through this method, the Defendants City, and BECK through the LAPD and with the authority, approval and sanction of the Defendants AT&T and, VERIZON intercepts and/or records the contents of the communications of as many as a thousand

people inside the City and/or County of Los Angeles and the State of California in general at any one time.

71. Under the Program, Defendants City, and BECK through the LAPD and with the authority, approval and sanction of the Defendants AT&T and, VERIZON did not obtain judicial review before or after intercepting the communications of people inside the City and/or County of Los Angeles and the State of California in general.

## COUNT I- INTERCEPTION OF ELECTRONIC COMMUNICATIONS UNDER THE ECPA BY ALL DEFENDANTS

72. The Plaintiff repeats and re-allege each and every allegation above as if fully set forth herein.

73. The Plaintiff asserts this Count against all Defendants, Jointly and severally, pursuant to Sections 2511 and 2520 of the ECPA, 18 U.S.C. The ECPA section 2511 contemplates surreptitious interception or acquisition, either contemporaneous with transmission, or whether such acquisition may occur any time before the initial cognitive receipt of the contents by the intended recipient, or under some other conditions.

74. Section 2511 of the ECPA provides in part:

> (1) Except as otherwise specifically provided in this Chapter, any person who:
>> (a) Intentionally intercepts, endeavors to intercept, or procures any person to intercept or endeavors to intercept any...electronic communications;
>> (d). intentionally uses, or endeavors to use, the contents of any ... electronic communication, knowing or having reason to know that the information was obtained through the interception of a[n]...electronic communication in violation of this subsection; shall be punished as provided in subsection (4) or shall be subject to a suit as provided in subsection (5).

75. Section 2520 of the ECPA provides in part:

> (a). **In General.**— Except as provided in section 2511 (2)(a)(ii), any person whose ... electronic communication is intercepted, disclosed, or intentionally used in violation of

*this chapter may in a civil action recover from the person or entity, ... which engaged in that violation such relief as may be appropriate.*

*(b) Relief.— In an action under this section, appropriate relief includes—*

*(1) such preliminary and other equitable or declaratory relief as may be appropriate;*
*(2) damages under subsection (c) and punitive damages in appropriate cases; and*
*(3) a reasonable attorney's fee and other litigation costs reasonably incurred.*

76. Section 2510 of the ECPA setting forth the definition of the terms used in Section 2511, defines "person" to include "any employee or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation..." 18 U.S.C Section 2510(6). Accordingly, each Defendant is a "person" within the meaning of Section 2511.

77. Section 2510 of the ECPA defines "electronic communications" to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo electronic or photo optical system that affects interstate or foreign commerce..." Accordingly, the Plaintiff cell phone communications, geolocation information and data complained of against the Defendants constitute an "electronic communication" within the meaning of Section 2511 of the ECPA.

78. Section 2510 defines "intercept" to mean the "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device". Section 2510 of the ECPA defines "electronic, mechanical or other device" to mean "any device or apparatus which can be used to intercept a wire, oral, or electronic communication..." subject to exclusions not relevant to this action.

79. The Stingray device (software/hardware) used by the Defendants to remotely intercept and/or access Plaintiff's communications complained of constitute "an electronic...device" within the meaning of section 2510 (5) of the ECPA. By using the said of Stingray device, to secretly obtain Plaintiff's communications, geolocation information and/or data, each

Defendant "intercepts" that communication within the meaning of section 2511 of the ECPA.

80. By virtue of the foregoing, Plaintiff is a "person whose…electronic communication is intercepted…or intentionally used in violation of this chapter" within the meaning of section 2520 of the ECPA.

81. By virtue of the foregoing, the Defendants are liable to Plaintiff for their violation of sections 2511 and 2520 of the ECPA.

82. Since Plaintiff first learned of the Defendants unlawful conduct using the Stingray device to access, obtain, store, transfer and/or release Plaintiff's communications and complained of on or about September 2014, this action is timely and not beyond the ECPA's applicable statute of limitations.

83. Defendants' actions and/or conduct complained of herein were conscious, deliberate, intentional, premeditated, wanton and malicious, entitling the Plaintiff to an award of punitive damages.

84. Plaintiff has no adequate remedy at law for Defendants continued violation of the ECPA.

## COUNT II- STORED COMMUNICATIONS ACT (18 U.S.C Section 2701)
## BY ALL DEFENDANTS

85. The Plaintiff repeats and re-allege each and every allegation above as if fully set forth herein.

86. Section 2701 of the SCA provides in pertinent part:

*Except as provided in subsection (c) of this section, whoever:*

*(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or*

*(2) intentionally exceeds an authorization to access that facility;*

*and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as*

*provided in subsection (b) of this section.*

87. Section 2711 of the SCA defines "electronic communication" as "any transfer of signs, signals, writings, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire , radio, electromagnetic, photo electronic, or photo optical systems that affects interstate or foreign commerce…"18 U.S.C Sections 2711, 2510(12). Accordingly the Plaintiffs cell phone communications, geolocation information and/or data complained of are "electronic communications" within the meaning of the SCA.

88. Under Sections 2711 and 2510 of the SCA defines "person" to include " any employee or agent of the United States, or of a State or Political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation …" 18 U.S.C Sections 2711 and 2510(6). Accordingly, the Defendants are persons within the meaning of the SCA.

89. Section 2711 of the SCA defines "electronic storage" to include "any temporary, intermediate storage of wire or electronic communications incidental to the electronic transmission thereof…" 18 U.S.C sections 2711 and 2510(17)(A).

90. Defendants' use of the Stingray device to remotely intercept and access and/or obtain Plaintiff's cell phone communications, data and/or geolocation information complained hereof constitutes an unauthorized acquisition of stored electronic communications in violation of the SCA.

91. Section 2701(b) of the SCA provides punishment in those instances where unauthorized acquisition of stored electronic communications was not done for commercial gain or advantage by imposing "a fine under this title or imprisonment for not more than 6 months or both…" 18 U.S.C section 2701(b) (B).

## COUNT III- VIOLATION OF CIVIL RIGHTS ACT (42 U.S.C Section 1983) BY ALL DEFENDANTS

92. The Plaintiff repeats and re-allege each and every allegation above as if fully set forth herein.

93. Section 1983 states in pertinent part:

*Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."*

94. All the Defendants are persons within the meaning of section 1983 , in that at all times material hereto, they were acting under the color of state law as a political subdivision of the of California or a representative thereof.

95. The Defendants clandestine remote interception, access and/or transfer of the Plaintiff's communications, data and/or geolocation information, deprived the Plaintiff of his right to privacy as protected by the 4th Amendment of the United States Constitution.

96. **The Defendants AT&T and Verizons' actions herein described are attributable to the Defendant City and BECK in that the Defendants AT&T, Verizon, and Defendant City and BECK engaged in a symbolic relationship using the stingray under the Program. Defendant City and BECK have also insinuated itself into a position of interdependence with The Defendants AT&T, Verizon, that the Defendants AT&T, Verizon, and Defendant City and BECK are joint participant in the conduct and violations herein described. The arrangement between the Defendant City and BECK and Defendants AT&T, and Verizon,, coupled with the significant regulations and control over the program that was exercised by Defendant City and BECK, created a sufficient link between Defendant City and BECK and Defendants AT&T, Verizon, placing the Defendants AT&T, Verizon, activities under the umbrella of state action sufficient to satisfy the requirements of 42 U.S.C Section 1983. Thus Defendants AT&T, and Verizon, when they unlawfully intercepted, transferred and/or recorded**

**the Plaintiff's communication information under the Program, thereby violating the Plaintiff's right as protected by law.**

97. As Plaintiff first learned of the Defendants unlawful deprivation of his privacy on or about September, 2014, this action has been commenced within the Section 1983 applicable two-year statute of limitation.

98. The Defendants conducts in remotely intercepting, surveying, accessing and obtaining Plaintiff's cell phone communications, data and/or geolocation information complained of herein, which resulted in the deprivation of Plaintiff's constitutionally-protected right to privacy was premeditated, conscious, deliberate, extreme and outrageous , and thereby entitles Plaintiff to an award of punitive damages.

## COUNT V- Violation of 42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth, Amendments and in violation of 42 U.S.C. § 1981 (Against Defendants City, and BECK only)

99. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

100. 42 U.S.C. § 1983 provides that:

*Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .*

101. Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

102. The Defendants to this claim at all times relevant hereto were acting under the color of state law.

103. Plaintiff had the following clearly established rights at the time of the complained of conduct:

    a.  the right to be secured in his person, houses, papers, and effects, from unreasonable searches and seizure, under the Fourth Amendment shall not be violated under the 4th Amendment of the United States Constitution.

104. Defendant BECK and Defendant City knew or should have known of these right at the time of the complained of conduct as they were clearly established at that time.

105. The acts or omissions of these Defendants, as described herein, deprived the Plaintiff of his constitutional and statutory rights and caused him other damages.

106. Defendants are not entitled to qualified immunity for the complained of conduct.

107. Defendant BECK and Defendant City, were, at all times relevant, policymakers for the City of Los Angeles and the Los Angeles Police Department, and in that capacity established policies, procedures, customs, and/or practices for the same under the program.

108. These Defendants developed and maintained policies, procedures, customs, and/or practices under the Program exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

109. Defendant BECK and the Defendant City have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers under the Program in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

110. Defendant BECK and Defendant City, despite knowledge and adequate opportunity to learn of the misconduct of their agents and employees, adopted, approved, and ratified the acts, omissions, and misconduct of those employees and Defendants AT& T and Verizon under the Program.

111. In light of the duties and responsibilities of those police officers that participated in the unlawful interception, surveillance of the Plaintiff's cell phone communications, geolocation information and/or data, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision under the program is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

112. The deliberately indifferent training and supervision provided by Defendant City and Defendant BECK under the program resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant City and Defendant BECK and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

113. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial.

114. Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to redress Defendants' above described ongoing deliberate indifference in policies, practices, habits, customs, usages, training and supervision under the with respect to the rights described herein, and with respect to the ongoing policy and/or practice of the Internal Affairs Bureau of failing to investigate or appropriately handle complaints of the

1    same, which Defendants have no intention for voluntarily correcting despite obvious need

2    and requests for such correction

### COUNT V- INVASION OF PRIVACY
### (US CONSTITUTION, AMENDMENT IV)
### BY ALL DEFENDANTS

115. The Plaintiff repeats and re-allege each and every allegation above as if fully set forth herein.

116. At a minimum, and pursuant to the Fourth Amendment of the United States Constitution, Plaintiff has a reasonable expectation of privacy with respect to the use of his cell phone and Communications Information.

117. **The Defendants AT&T and, Verizons' actions herein described are attributable to the Defendants City and BECK in that the Defendants AT&T and, Verizon and Defendants City and BECK engaged in a symbolic relationship using the stingray under the Program. Defendants City and BECK have also insinuated itself into a position of interdependence with The Defendants AT&T and, Verizon, that the Defendants AT&T, Verizon, and Defendants City and BECK are joint participant in the conduct and violations herein described. The arrangement between the Defendants City and BECK and Defendants AT&T, and Verizon, coupled with the significant regulations and control over the program that was exercised by Defendants City and BECK, created a sufficient link between Defendants City and BECK and Defendants AT&T, and Verizon, placing the Defendants AT&T, and Verizon, activities under the umbrella of state action sufficient to satisfy the requirements of 42 U.S.C Section 1983. Thus Defendants AT&T, and Verizon, , when they unlawfully intercepted, transferred and/or recorded the Plaintiff's communication information under the Program, thereby violating the Plaintiff's right as protected by law.**

118. Plaintiff is informed and believes, and thereupon alleges further that it was foreseeable, contemplated and intended by the Defendants that interception, tracking, recording and/or

obtaining of Plaintiff's Communications Information without Plaintiff's knowledge or consent would cause injuries to the Plaintiff and violates Plaintiff's constitutionally protected right to privacy.

119. In particular, the Plaintiff was never informed by the Defendants that his Communications Information were being remotely intercepted, accessed, obtained, shared, released and/or transferred by the Defendants, and/or its agents, workers or surveillance, recording and /or interception would naturally access and/or obtained Communications Information of the Plaintiff.

120. In as much as the Plaintiff's cell phone was used by the Plaintiff for his Communications Information sharing with friends and families alike all over the world, it is believed that and therefore averred that the Defendants City and BECK together with support, collusion and/or aid of Defendants AT&T and Verizon have the ability to intercept Plaintiff's Communications Information without Plaintiff's permission and authorization, all of which is embarrassing and humiliating.

121. As Plaintiff's cell phone was routinely used for his communication and data sharing, it is believed and therefore averred that many of the Communications Information intercepted, surveyed, recorded and/or obtained by the Defendants may consist of but not limited to compromising or embarrassing communications.

122. Defendants wrongful conducts as alleged hereinabove, without regard to whether the Defendants acted intentionally, willfully or without any particular state of mind or scienter, renders Defendants and each of them liable to the Plaintiff for the wrongful intrusion into Plaintiff's seclusion and for damages caused thereby. In doing the acts as alleged hereinabove, Defendants and each of them, acted with actual malice and constitutional malice that this they acted intentionally, or with conscious disregard for the Plaintiff's constitutionally protected right to privacy.

123. The Defendant conducts in remotely intercepting, accessing and/or obtaining Plaintiff's Communications Information complained of herein, which resulted in the deprivation of Plaintiff's constitutionally-protected right to privacy was premeditated, conscious,

deliberate, extreme and outrageous , and thereby entitles Plaintiff to an award of punitive damages.

124. Plaintiff is informed and believes, and thereupon alleges, that in performing the acts herein alleged, , the Defendants and each of them acted with oppression, fraud and malice, or alternatively the Defendants and each of them, acted in such conscious disregard of the Plaintiff's right to privacy that , as a direct and proximate result of the Defendants collective and individual acts, Plaintiff is entitles to punitive damages to punish the Defendants and each of them and to deter such conduct in the future, in an amount to be determined at trial.

## COUNT VI- VIOLATION OF CIVIL RIGHTS ACT (42 U.S.C Section 1983)
### (Against Defendant BECK)

125. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

126. 42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

127. Plaintiff in this action is a citizen of the United States and all of the individual police officer Defendant BECK to this claim are persons for purposes of 42 U.S.C. § 1983.

128. Defendant BECK to this claim, at all times relevant hereto, was acting under the color of state law in his capacity as Los Angeles City or County Police officer and his acts or omissions were conducted within the scope of their official duties or employment.

129. At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secured in his person, houses, papers, and effects, from unreasonable searches and seizure without probable cause.

130. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

131. Defendant BECK's actions and use of the Stingray Device and surveillance by the LAPD Air Unit to intercept, spy and/or obtain Plaintiff's cell phone communications, data and/or geolocation information, as described herein, were objectively unreasonable in light of the

facts and circumstances confronting Defendant Beck and violated these Fourth Amendment rights of Plaintiff.

132. Defendant BECK's actions and/or conducts complained and as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The conduct of Defendant Beck shocks the conscience and violated the Fourth Amendment rights of Plaintiff.

133. Defendant BECK, despite knowledge and adequate opportunity to learn of the misconduct of their agents and employees, adopted, approved, and ratified the acts, omissions, and misconduct of the LAPD Air Unit and/or the Defendants AT& T, and Verizon.

134. Defendant BECK did so with shocking and willful indifference to Plaintiff's rights and his conscious awareness that his conduct would cause Plaintiff severe physical and emotional injuries.

135. The acts or omissions of all Defendant BECK was the moving forces behind Plaintiff's injuries.

136. The acts or omissions of Defendant BECK as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

137. Defendant BECK is not entitled to qualified immunity for the complained of conduct.

138. The Defendant BECK at all times relevant hereto was acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in relation to the program and in his actions pertaining to Plaintiff.

139. As a proximate result of Defendant BECK's unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including the appointment of a consultant to investigate the violations of Plaintiff's rights and related expenses and may continue to incur further damages and other special damages related expenses, in amounts to be established at trial.

140. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendant BECK as an individual under 42 U.S.C. § 1983, in that the actions of the individual Defendant was taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## PRAYERS FOR RELIEFS

WHEREOF Plaintiff Scott Joseph Wallace request judgment in his favor against Defendants

CELLCO PARTNERSHIP, dba VERIZON WIRELESS; AT&T MOBILITY LLC, The City of Los Angeles, Chief Charlie Beck jointly and severally, as follows:

1- For Compensatory damages;

2- For Punitive damages;

3- For Special damages in an amount to be determined at trial;

4- For Injunctive and declaratory reliefs;

5- For Attorneys' fees and cost of this litigation; and,

6- For Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Plaintiff hereby demands a trial by jury on all issues for which a right of jury trial exists.

Respectfully submitted this 21 day of March, 2016

By: _____

**SCOTT JOSEPH WALLACE**
21781 VENTURA BLVD, APT 211
WOODLAND HILLS, CA 91364
Tel: 310-597-2910
Email: joe@jwallace.biz

**Plaintiff In Pro Per**

# PROOF OF SERVICE

I declare that I am a resident of or employed in the County of _____LOS ANGELES_____,

State of ___CA_____. I am over the age of 18 years. The name and address of my

residence or business is ____21781 VENTURA BLVD., SUITE 211 WOODLAND HILLS, CA 91364____.

On ___MARCH 21, 2016_____, I served the ___SECOND AMENDED COMPLAINT___
            (Date)                                          (Description of document(s))

_____
          (Description of document(s) continued)

on the parties listed below (include name, address and, where applicable, fax number) by (check

the applicable method or methods):

____X____ placing a true copy thereof enclosed in a sealed envelope for collection and delivery

by the United States Postal Service or private delivery service following ordinary business

practices with postage or other costs prepaid;

_____ personal delivery;

_____ facsimile transmission in accordance with the requirements of PERB Regulations

32090 and 32135(d).

(Include here the name, address and, where applicable, fax number of the Respondent and any other parties served.)

GLEAM DAVIS (Bar No. 123047)          BEN MOHANDESI
AT&T SERVICES LEGAL DEPARTMENT        JORDAN YU
P.O. Box 19849                        633 W. 5th Street, Suite 2800
Los Angeles, California  90019-0849   LosAngeles, CA 9007`

MICHAEL N. FEUER, City Attorney -
ELIZABETH L. GREENWOOD
200 N. Main Street, 6th Floor, City Hall East 4
Los Angeles, CA 90012

I declare under penalty of perjury that the foregoing is true and correct and that this

declaration was executed on ___MARCH 21, 2016_____, at ___WOODLAND HILLS___  ___CA___.
                                    (Date)                      (City)            (State)

FERRAH WALLACE                        _____
      (Type or print name)                         (Signature)